## WEBER v. JACOBS & DAVIES, Inc.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

1. MASTER AND SERVANT ⬤═117—INJURY TO SERVANT—DUTY OF MASTER— SAFETY APPLIANCE.

A master, who employed servants to operate a derrick, was not liable for injuries to one of such servants, resulting from failure to supply a safety device which was shown to have been only in comparatively slight use on derricks.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 208; Dec. Dig. ⬤═117.]

2. MASTER AND SERVANT ⬤═97—INJURY TO SERVANT—DUTY OF MASTER—RE- MOTE POSSIBILITY OF INJURY.

A master, employing servants to operate a derrick, was not under liability for injuries resulting in a manner which the master could have foreseen only by speculating upon distant possibilities.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. ⬤═97.]

3. MASTER AND SERVANT ⬤═185—INJURIES TO SERVANT—FELLOW SERVANT.

One employing servants to operate a derrick was not liable for injuries to one of them, occasioned by the neglect of a cranesman, a fellow servant of the man injured, to insert a pin to lock the throttle upon moving the derrick forward.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. ⬤═185.]

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MASTER AND SERVANT ⬅➡286—INJURY TO SERVANT—QUESTION FOR JURY.
In an action against the employer of servants to operate a derrick, for death of one of them by the falling of a boom upon him, whether the superintendent was negligent in exercising no greater supervision than he did over the use of a pin to secure the throttle when the derrick was being moved forward, or in failing to be prepared to maintain the bucket or arm in suspension, *held* for the jury.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⬅➡286.]

Appeal from Trial Term, Kings County.

Action by John Weber, as administrator of John Weber, deceased, against Jacobs & Davies, Incorporated. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

S. B. Olney, of Lawrence, for appellant.
Joseph A. Shay, of New York City, for respondent.

THOMAS, J. The defendant and plaintiff's decedent were master and servant, and the death was caused by the fall of a bucket or arm to which it was attached, which were a part of a steam derrick. The derrick had a boom some 21 or 22 feet long, within which an arm was attached to the boom several feet from its inner end. Some 15 or more feet aft of the place of attachment was an engineer, who had charge of the main engine, and superintended the operation and movement of the derrick, and the several men who did the work, to which I shall call attention. One of these men, known as the cranesman, standing on a platform, had immediate charge of a smaller engine connected with the boom at the place where the arm was attached to it. When the derrick had taken out the earth as required within its reach, it was moved on, for which purpose ties and rails were laid. It was the cranesman's duty to descend from his post on the boom and take immediate charge of the tracklaying and moving of the derrick, as he did on the occasion in question, while the engineer stood at his post, controlling the engine and overseeing the men. The derrick was held in place by jacks on each side, and it was necessary for the movement of the derrick to loose them, first on one side and then on the other, and for that purpose to swing the very heavy boom to the sides to relax the grip of the jacks, and then to bring it back on the derrick's center line to maintain its equilibrium. That had all been done by the engineer by means of a lever by which he could actuate machinery that would swing the boom from the central position to either side. The engineer also controlled a lever that let the bucket or dipper descend or drew it up. That lever was in front of him, while the other was at his back and less accessible in matter of reach. The cranesman's engine was used under his hand to let the arms that held the bucket go forward or backward in the boom. It seems that the engine could send the arm so far forward as to allow it to fall out of the boom, as it did in the present instance; but that would not happen if the cranes-

man put his throttle at the center, and kept it there by an equal pressure of steam, or if, he inserted through it a pin which engaged the bed of the engine. But the cranesman went from his station to further the work of moving the derrick forward, and immediately when the boom came back to its forward position the arms moved forward out of the boom and fell on the plaintiff's decedent, who, with others, was leveling the ground for the new ties and rails. It is inferred that the throttle was not pinned and that the engine starting moved out the arm.

The charge summarizes distinctly the questions of liability on which the jury should pass. They are, in effect: (1) Whether the machine was in such defective condition as to endanger unnecessarily the servant's safety; (2) whether Yates, the engineer, was negligent in not controlling the bucket by the levers in his engine; (3) whether Yates, as the person in control of the men, culpably omitted something, which caused the death. The first question was directed to the evidence of the expert, Hartigan, that there is a contrivance which would prevent the arms from going through the boom. He said:

"I have seen it several times, but there are lots of shovels that don't have it on. * * * Probably I know of about half a dozen places where it is used."

. Later he adds that he had not seen it on the Merriam shovel, but knew that "there is one on some of them." The witness testified as to the contrivance: "I don't know whether you would call it general use or not." The learned justice presiding stated, among other things, that it was self-evident "that, had there been a crossbar at the top, the arm would not have gone through the slide," and brought to the jury the proposition whether the master should have—

"known that if the cranesman absented himself from that engine, and left that pin out of the bed of that engine—and thereby left the lever uncontrolled, unless there was steam on from the engine that was up there on the boom— should the master have known that such a concatenation of circumstances might ensue in this work that this arm would go through that slide? And, if he did, should he have known that the very result which occurred here might have been anticipated? If that was the case, should the master in the exercise of due prudence have put something up there, or across the top of that arm, to have prevented it sliding through and causing just what ensued? In other words, could he, or should he, by that means, have prevented the accident?"

The charge is reiterated:

"If, with the cranesman absent and the pin out, and the engine not having steam on to hold this arm up, there was nothing to prevent this bar from slipping out; and if the master should have known of the likelihood of the absence of the cranesman at times, for various purposes, and the possibility of that pin slipping out, or being left out; and if he should have known that unless the lever was holding that arm by reason of the pressure of the steam, and that unless there was something there to keep the arm from slipping out, and that it might slip out under those conditions—then was he negligent in not having that machine in such a state that it would not have caused this accident?"

[1, 2] So there is the evidence that on six machines a witness had seen an undescribed contrivance to prevent the arms escaping, and that in many machines there were not any, also the statement of the court

that it is self-evident that, had there been a crossbar at the top the arm would not have gone through, and the final charge that if the master should have known of the "likelihood" of the cranesman's absence, the "possibility" of the pin slipping out, or being left out, and that the arm "might" slip out, the jury could impute negligence to defendant. This makes the ultimate basis of negligence possibilities, and not probabilities. The master had furnished a pin which, if used, would prevent absolutely such an accident; it being at the cranesman's hand. So the jury was permitted to find, under the state of fact that in six machines a bar was used, while in many cases it was not, that the master should have apprehended that the servant might not insert the pin, and that conditions were possible whereby the arm might escape. That placed upon the master the duty of speculating upon distant possibilities, and thereupon, in addition to furnishing a lock for the throttle, to adopt an unexplained contrivance shown to be in partial, but not in common, use. I cannot but think that the rule charged requires an excess of anxiety on the part of the master about things that may happen, and constrains him to thwart possibilities by adopting appliances not in general, although in exceptional, use. I do not wish to say at this time that fuller evidence of the nature of the safeguard, of its practical working and the extent of its use, would not be sufficient to enable the jury to consider whether due care on the part of the master would not require him to consider the probability that its use was necessary to furnish his servants reasonable protection. As the jury may have based their verdict upon the question of a defective machine, there should be a new trial.

[3, 4] The negligence of Yates was involved in the second or third questions. The third question, in my judgment, contained all that justified inquiry in that regard. Whether the master was or was not negligent in failing to furnish a stop for the arm, the absence of the same was apparent, and the care of the master or his superintendent to counteract any probable consequences was to be measured by existing conditions. The master had supplied a pin to lock the throttle. The neglect of the cranesman to insert it in an instance like this would be the negligence of a fellow servant, for which he would not be liable. Unless, then, he provided for some safeguarding against the arm escaping in case the cranesman neglected to use the pin, protection was not afforded and the master had made himself immune. The question then arises whether the master had done his legal duty in furnishing the pin and directing its use. He had an engineer, who could prevent the arm falling out by attention to the lever that supported it, or by seeing to it that the cranesman should not leave his place until he had fastened the throttle. Unless some proper stop guard was provided, or the superintendent used care to enforce the rule, or stood ready to hold up the bucket by using his lever, the men working under the bucket were dependent upon the fidelity of a fellow servant. I think that it was a fair question for the jury whether the superintendent was negligent in exercising no greater supervision than he did over the use of the pin, or in failing to be prepared to maintain the bucket or arm in suspension. But it is hardly a question of his acting

in an unexpected emergency upon the theory involved in the second question, but rather whether he should not, by his 'overseeing or intervention, have used due care to prevent the arm going out and falling.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.